UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
KERRI ANN CORCORAN                              :
                                                :
                              Plaintiff,         :
                                                :         08 Civ. 10734 (HB)
          - against -                            :
                                                :         OPINION &
                                                :         ORDER
STEPHANIE HIGGINS,                              :
                                                :
                              Defendant.          :
                                                :
------------------------------------------------------------------------x

**Hon. Harold Baer, Jr., U.S.D.J.:**

On April 15, 2008, Plaintiff Kerri Ann Corcoran ("Corcoran" or "Plaintiff") was arrested by Defendant Stephanie Higgins ("Higgins" or "Defendant"), a New York State Police Trooper.  That incident forms the basis for Plaintiff's Complaint, which alleges claims of false arrest, malicious prosecution, and violations of Plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution, all in violation of 42 U.S.C.§ 1983 ("Section 1983").  Defendant now moves for summary judgment pursuant to Fed. R. Civ. P. 56.  For the following reasons, her motion is granted.

## I.  FACTUAL BACKGROUND

Corcoran was at home on the afternoon of April 15, 2008 when she received a phone call from her husband, who said that he was in trouble with the police.  Corcoran Dep., Def's Ex. C at 45:5-46:2.  At around the same time, a blue Hyundai Elantra was stopped by the New York State Park Police near Fahnestock State Park, but the driver fled before the police released him  Id. at 30:13-31:09. Corcoran's husband was driving the blue Elantra.  Id.¶5.[1]

---

[1] Paragraphs 2 and 5 of Defendant's 56.1 Statement rely on the Arrest Report that was generated the day of the incident.  See Def's Ex. B at KAC 2.  In her Rule 56.1 Counter-Statement, Plaintiff asserts that the narrative section of the Arrest Report is hearsay and cannot be relied upon. Defendant does not offer this information for the truth, but rather to show why the New York State Police were investigating the blue Hyundai Elantra. The objection is overruled.  See Fed. R. Evid. 801.

After, the park police informed the state police that they had attempted to stop the blue Elantra.  Thereafter, Trooper Higgins was sent by the state police to the address on the car's registration, 247 East End Road, Wappingers Falls, New York.  Id.¶3.  When Higgins arrived at the address, the blue Elantra was not there, but a tan Hyundai sport utility vehicle ("SUV") was parked at the house.  Id.  Higgins watched the Plaintiff come outside, get into the tan SUV, and drive away.  While she was out, she called home to speak with her children.  Corcoran Dep. 50:2-10; 532:20-23.  The child who answered handed the phone to Trooper Victor Cardus, a police officer who was at the house to investigate the missing Elantra.  Def's 56.1 Stmt.¶9.  When Corcoran finished the conversation with Cardus, she left her friend's house and drove home.  Corcoran Dep. at 55:3-9.

Corcoran was driving along East End Road when Trooper Higgins stopped her.  Def's 56.1 Stmt.¶11.  Higgins asked Corcoran to identify herself, and confirmed that Corcoran was a resident of 247 East End Road and the wife of the driver of the blue Elantra sought by the park police.  Id.¶12.  The parties disagree slightly about the Defendant's next questions—Higgins contends that she "asked Plaintiff whether she knew that her husband was in trouble with the police," (Def's 56.1 Stmt.¶13), but Corcoran maintains that  the Trooper simply informed her that her husband was in trouble.  Pl.'s 56.1 Counter-Stmt.¶13.

Corcoran became panicked and short of breath as the Trooper continued to question her, and she recognized her symptoms as a panic attack.  Corcoran Decl.¶10.  Corcoran recalls that she told Higgins that she was having a panic attack and asked Higgins to speak more slowly, but Higgins denies this.  Id.; see also Def.'s 56.1 Reply¶ 16.   Higgins perceived Corcoran to have glassy eyes, slurred speech, and impaired motor coordination, which Higgins believed were signs of intoxication; Corcoran expressly denies that she had glassy eyes or slurred speech, and submits that any impairment in her coordination was due to panic, not intoxication.  Def's 56.1 Stmt¶15; Corcoran Aff.¶11.

Higgins asked Corcoran whether she had been drinking, and Corcoran said "no."  Corcoran Dep. at 60:19-21.  Defendant then administered Standardized Field Sobriety Tests ("SFTSs"), which included the horizontal gaze nystagmus test, the walk and turn test, the one leg stand test, and the Romberg Balance Test.  See Bill of Particulars, Def's

Ex. F.  Corcoran passed the first test, but failed the other three tests, all of which were witnessed by Trooper Cardus.  Def's 56.1 Stmt.¶27.  Corcoran contends that Higgins did not fairly evaluate her performance on the tests.[2] Pl's 56.1 Stmt.¶16.

Corcoran was then arrested and handcuffed.  Def's 56.1 Stmt.¶27.  Corcoran believes that she was told that her arrest was for "drinking and driving." Pl.'s 56.1 Stmt.¶ 28. She was transported to the State Police barracks.  At the barracks, Corcoran was given a breathalyzer test, which registered "0.0," meaning that it detected no alcohol.  Id. at¶35.  Corcoran provided a urine sample to be tested for drugs, and was fingerprinted and photographed.  Although Corcoran was kept in handcuffs while at the barracks, she was never placed in a cell.  She was given two traffic tickets, returnable to the East Fishkill Town Court on April 30, 2008 at 4:00 p.m., and was released without bail.  Id.¶ 38. The two traffic tickets that were issued after Corcoran's arrest show that she was arrested under suspicion of having violated New York State Vehicle and Traffic Law section 1192.3, Driving While Intoxicated, and section 1192.4, Driving With Ability Impaired by Drugs, both of which are misdemeanor charges.  See Uniform Traffic Tickets, Def's Ex. D.

On April 28, 2008, the Dutchess County District Attorney's Office declared that it was ready to try the case against Corcoran, and on June 28, submitted to the East Fishkill Town Court and to Corcoran the results of her toxicology exam, which showed that her urine was negative for drugs.[3] Def's 56.1 Stmt.¶43-44.  The charges against Corcoran were dismissed by the East Fishkill Town Court on July 2, 2008, but she nevertheless retained an attorney and made several court appearances.  Id.¶46; Pl.'s 56.1 Counter-Stmt. at¶45.  On December 10, 2008, Corcoran commenced the instant action.  Defendant Higgins filed an Answer to the Complaint on March 30, 2009 and now moves for summary judgment.

## II.  LEGAL STANDARD

---

[2] Defendant, who is certified as an SFST instructor, testified during her deposition that this was the first time where a suspect failed SFSTs, when the toxicology reports were negative for narcotics or alcohol.  Higgins Dep., Pl.'s Ex. 2 at 52:15-54:9.
[3] Defendant contends that the toxicology laboratory did not test for Central Nervous System ("CNS") stimulants, CNS depressants, or dissociative anesthetics (see Def.'s Ex. E, Higgins Aff. ¶ 28), while Plaintiff argues that the laboratory tested for common CNS stimulants and depressants, as well as the two most common dissociative anesthetic drugs.  See Pl.'s 56.1 Counter-Stmt. ¶ 45.

Pursuant to Fed. R. Civ. P. 56(c), a district court must grant summary judgment if the evidence demonstrates that "there is no genuine issue as to any material fact and [that] the moving party is entitled to judgment as a matter of law." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 250 (1986). "Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986).

In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all inferences against the moving party. LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 205 (2d Cir. 2005). However, "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III.  DISCUSSION

#### A.  False Arrest

A section 1983 claim requires a plaintiff to show that she was deprived of "rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C§1983.  A claim for false arrest pursuant to section 1983 arises out of the plaintiff's Fourth Amendment  right to be free from unreasonable seizures, "which includes the right to remain free from arrest absent probable cause." Jaegly v. Couch, 439 F.3d 149, 151 (2d Cir. 2006).  In this Circuit, courts analyze such allegations using the applicable tort law of the state in which the arrest occurred. See Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) (collecting cases).  Under New York law, to state a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Savino v. City of New York, 331 F.3d 63, 65 (2d Cir. 2003).

4

There is no dispute that Corcoran was, in fact, arrested; therefore, the only question is whether the arrest was "privileged" or "justified." Id. at 76.  Justification may be established by showing that the arrest was based on probable cause.  Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996).  Probable cause to arrest "exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the believe that an offense has been or is being committed by a person to be arrested."  Williams v. Town of Greenburgh, 535 F.3d 71, 79 (2d Cir. 2008).  Probable cause is an absolute defense to a false arrest claim.  Jaegly, 439 F.3d at 152.

Defendant Higgins moves for summary judgment on the grounds that she had probable cause to arrest Corcoran.  In opposition, Corcoran argues that Higgins lacked probable cause for the traffic stop, as required by the Fourth Amendment, and therefore, the arrest that followed was illegal.  Even a lower standard is permitted for a traffic stop. A law enforcement officer may conduct a traffic stop on the basis of "reasonable suspicion," a lower threshold than probable cause, which is the general prerequisite for an officer to conduct a search or seizure.  See United States v. Sokolow, 490 U.S. 1, 8 (1989) (quoting Terry v. Ohio, 392 U.S. 1, 30 (1968)) ("The police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.").  The lower standard for the stop saves the Defendant on this score.[4]

However, even if I were to find otherwise, Higgins is entitled to qualified immunity on Plaintiff's false arrest claim, because she had "arguable probable cause" to arrest Corcoran.  "Arguable probable cause…exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed."  Crenshaw v. City of Mount Vernon, 2010 WL 1568603 at *2 (2d Cir. 2010) (internal quotations omitted).  In deciding whether arguable probable cause exists, courts looks to whether "'(a) it was

---

[4] This is the first allegation that Higgins lacked probable cause for the traffic stop, but even if she had, "the lack of probable cause to stop and search does not vitiate the probable cause to arrest, because…the fruit of the poisonous tree is not available to assist at § 1983 claimant."  Townes v. City of New York, 176 F.3d 138, 148-49 (2d Cir. 1999).

objectively reasonable for the police officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. (quoting Escalera v. Lunn, 361 F.3d 737, 743 (2d Cir. 2004)).

Trooper Higgins's decision to make the arrest was based on the "totality of the circumstances," Illinois v. Gates, 463 U.S. 213, 230 (1983), which showed that Corcoran had trouble communicating, and failed three out of four field sobriety tests.  A second police trooper, Trooper Cardus, was present when Higgins administered the walk and turn test, the one leg stand test, and the Romberg balance test, and he agreed with Higgins that Corcoran's performance signaled that she was impaired by drugs or alcohol.  Cardus Decl., Def.'s Ex. G¶8-9.

The fact that Corcoran later tested negative for drugs and alcohol is immaterial, because an officer's determination of whether probable cause exists is based on the "facts known to the officer at the time of the arrest." Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).  Neither does the possibility that Corcoran suffered a panic attack before the arrest disturb our conclusion that a reasonable officer could have concluded that an arrest was appropriate under the circumstances.  A police officer who has a reasonable basis for believing there is probable cause "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).

## B.  Malicious Prosecution

A section 1983 claim for malicious prosecution, which is in essence a claim of deprivation of liberty, implicates the Fourth Amendment right to be free of unreasonable seizure of the person.  Albright v. Oliver, 510 U.S. 266, 271, 274 (1994).  Correspondingly, to make out a claim for malicious prosecution, a plaintiff must "show some deprivation of liberty consistent with the concept of 'seizure.'" Singer v. Fulton County Sheriff, 63 F.3d 110, 116 (2d Cir. 1995).

Here, Corcoran suffered no deprivation of liberty, because "the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." Burg v. Gosselin, 591 F.3d 95, 98 (2d Cir. 2010).  Corcoran received summonses for two alleged

misdemeanors, as shown on the face of the Uniform Traffic Tickets that she was issued.[5]
See Def.'s Ex. D.  She was not subject to any other encumbrances on her liberty.
Corcoran claims that she made "multiple appearances" before the East Fishkill Town
Court, but alleges nothing more to suggest that her repeated visits to the court,
collectively, rose to the level of a Fourth Amendment seizure.  Accordingly, Higgins's
motion for summary judgment on the malicious prosecution claim is granted.

## IV.  CONCLUSION

Defendant Stephanie Higgins's motion for summary judgment is hereby
GRANTED and the Complaint dismissed.  The Clerk of Court is instructed to close the
case and remove it from my docket.

**SO ORDERED**
**May 13, 2010**
**New York, New York**

_____
U.S.D.J.

---

[5] In support of her claim for malicious prosecution, Corcoran alleges that Higgins
indisputably lacked probable cause to initiate prosecution on the DWI charge pursuant to New
York Vehicle & Traffic Law section 1192.3, because Corcoran blew "0.0" on the breathalyzer
test when she arrived at the barracks, so it was clear at the time the Uniform Traffic Ticket was
issued that Corcoran was not driving under the influence of alcohol. Pl. Opp. Br. 10.  Higgins
contends that she used the section 1192.3 charge because that section served for many years as
New York's "common law DWI charge," which encompassed charges of driving while
intoxicated by any substance. Def.'s Op. Br. 10.  New York no longer has a common law DWI
charge, nor did it at the time of Corcoran's arrest.  The New York Court of Appeals determined in
People v. Litto that section 1192.3 of the Vehicle and Traffic Law, which prohibits "driving while
intoxicated" cannot be applied to a motorist's use of any drug other than alcohol.  See People v.
Litto, 8 N.Y.692 (2007).  Although I have concluded that Corcoran's claim for malicious
prosecution fails for other reasons, I am concerned that nearly a year after Litto was decided,
police in Dutchess County still believed that they may use section 1192.3 as a generalized charge
of driving while intoxicated.